1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8   MARTIN R. LEGGETT,                                  )
                                                       )
9           Plaintiff,                                 )
                                                       )        3:12-cv-161-RCJ-VPC
10          v.                                         )
                                                       )
11                                                     )        **ORDER**
    FANNIE MAE, aka FEDERAL NATIONAL                   )
12  MORTGAGE ASSOCIATION ORGANIZED                     )
    AND EXISTING UNDER THE LAWS OF                     )
13  THE UNITED STATES OF AMERICA, its                  )
    successors and/or assigns; CAL-WESTERN             )
14  RECONVEYANCE CORPORATION, a                        )
    foreign corporation doing business in              )
15  Nevada; MORTGAGE ELECTRONIC                        )
    REGISTRATION SYSTEMS, INC., aka                    )
16  MERS, a foreign corporation doing business         )
    in Nevada; and CTX MORTGAGE                        )
17  COMPANY, LLC, a foreign limited liability          )
    company doing business in Nevada,                  )
18                                                     )
            Defendants.                                )
19                                                     )
    _____                )

20
                Currently before the Court are a Motion for Summary Judgment (#5); a Motion to Strike

21
    (#14); and a Motion to Expunge Lis Pendens (#18). The Court heard oral argument on July

22
    30, 2012.

23
                                        **BACKGROUND**

24
    **I.      Facts**

25
                On August 5, 1999, Plaintiff Martin R. Leggett purchased the property located at 2520

26
    Sunline Drive, Reno, Nevada 89523 ("Property"). (Compl. (#1) at 8-9). Plaintiff refinanced in

27
    2004 through Defendant CTX, the lender, by signing a note secured by a deed of trust. (Deed

28
    of Trust (#13) at 13). Stewart Title of Northern Nevada recorded the deed of trust on

1   November 17, 2004. (*Id.*). The deed of trust listed John L. Matthews or Timothy M. Bartosh

2   as trustee. (*Id.* at 14). The deed of trust named Defendant MERS as nominee for CTX and

3   CTX's successors and assigns, and MERS claimed to be the beneficiary under the security

4   instrument. (*Id.*).

5       Plaintiff failed to make his March 1, 2010 payment and on July 12, 2010, MERS, as

6   nominee for CTX, transferred the beneficial interest in the deed of trust from CTX to Aurora

7   Loan Services, LLC ("Aurora"). (*See* Notice of Breach and Default and of Election to Cause

8   Sale of Real Property Under Deed of Trust ("Notice of Default") (#13) at 45; Corporate

9   Assignment of Deed of Trust (#13) at 39-40). On the same day, MERS, as nominee for CTX,

10   also executed a substitution of trustee and substituted Defendant Cal-Western as trustee.

11   (Substitution of Trustee (#13) at 48).

12       On July 13, 2010, First American Title Insurance Company ("First American Title"), as

13   agent for Cal-Western, executed and recorded the Notice of Default. (Notice of Default (#13)

14   at 45-46). On August 9, 2010, First American Title recorded the assignment of deed of trust

15   from CTX to Aurora. (Corporate Assignment of Deed of Trust (#13) at 39).

16       On November 1, 2010, First American Title recorded a certificate from the Nevada

17   Foreclosure Mediation Program which indicated that no request for mediation had been made

18   or that the grantor had waived mediation. (Foreclosure Mediation Certificate (#13-1) at 87).

19   The certificate stated that the beneficiary could proceed with the foreclosure process. (*Id.*). On

20   November 10, 2010, Cal-Western executed a notice of trustee's sale. (Notice of Trustee's Sale

21   (#13-1) at 68). On December 13, 2010, Cal-Western sold the Property at a public auction to

22   Defendant Fannie Mae for $239,598.19. (Trustee's Deed Upon Sale (#13-1) at 90).

23       On January 21, 2011, Aurora transferred the beneficial interest in the deed of trust from

24   Aurora to Fannie Mae. (Corporate Assignment of Deed of Trust (#13) at 42). On February 2,

25   2011, First American Title recorded: (1) the assignment of deed of trust from Aurora to Fannie

26   Mae; and (2) the trustee's deed upon sale. (*Id.*; Trustee's Deed Upon Sale (#13-1) at 89).

27       On March 17, 2011, Fannie Mae filed a verified complaint for unlawful detainer. (*See*

28   Compl. (#1) at 16). Plaintiff stayed the complaint by filing a voluntary Chapter 7 petition in the

1    United States Bankruptcy Court, District of Nevada on June 27, 2011. (*See* Mot. for Summ.

2    J. (#5) at 6). After a series of motions, the bankruptcy court signed an order on December 21,

3    2011 and abstained from jurisdiction over the proceeding. (*Id.*).

4    **II.    Complaint**

5         In March 2012, Defendants filed a petition for removal and attached Plaintiff's complaint

6    from the Second Judicial Court in Washoe County.  (Petition for Removal (#1) at 1).  In the

7    complaint, Plaintiff sued Fannie Mae, Cal-Western, MERS, and CTX and alleged five causes

8    of action.  (Compl. (#1) at 7-8, 21-26).

9         In the first cause of action, Plaintiff alleges that the Notice of Default was invalid under

10   state foreclosure law.  (Compl. (#1) at 21).  He asserts that Defendants failed to mail a copy

11   of the Notice of Default to the Property.  (*Id.* at 22).  He also alleges that Defendants failed to

12   post a copy of the Notice of Default on the Property.  (*Id.* at 22-23).  Plaintiff further asserts

13   that Defendants failed to serve him with a notice as set forth in NRS § 107.085(3)(b).  (*Id.* at

14   22).  Plaintiff concludes that due to these violations, the statutory reinstatement period of 35

15   days has not yet expired.  (*Id.*; *see* Nev. Rev. Stat. 107.080(2)(a)(2)).

16        In the second cause of action, Plaintiff alleges that Defendants' foreclosure mediation

17   certificate is invalid because Defendants, in the Notice of Default, failed to provide contact

18   information of the agencies and authorities required by statute.  (Compl. (#1) at 23-24; *see*

19   Nev. Rev. Stat. § 107.086(2)(a)).

20        In the third cause of action, Plaintiff alleges that the notice of trustee's sale ("Notice of

21   Sale") was improper due to Defendants' failure to fully comply with NRS § 107.080(4)(a) and

22   NRS § 107.087(1)(a).  (Compl. (#1) at 24-25).  Plaintiff contends that Defendants failed to

23   comply with the respective statutes because he never received a copy of the Notice of Sale

24   after the three-month period following the recording of the Notice of Default and before selling

25   the Property, nor was the Notice of Sale posted on the Property not later than three business

26   days after the Notice of Sale was recorded.  (*Id.* at 25).

27        In the fourth cause of action, Plaintiff alleges that Defendants were not authorized to

28   sell the Property within the meaning of NRS § 107, because Defendants lacked standing.

1   (Compl. (#1) at 25-26).  Plaintiff further alleges that Defendants failed to record the trustee's
2   deed upon sale in line with the requirements of NRS § 107.080(8).  (Compl. (#1) at 26).

3        In the fifth cause of action, Plaintiff alleges an action for quiet title against Defendants.
4   (*Id.*).  He asserts that Defendants have no rights to the Property.  (*Id.* at 27).

5        Plaintiff seeks relief in the form of declaratory relief, quiet title, and payment for costs
6   incurred in bringing this suit.  (*Id.* at 26-28).

7   **LEGAL STANDARD**

8        Summary judgment is appropriate when, viewing the facts in the light most favorable
9   to the nonmoving party, "the movant shows that there is no genuine dispute as to any material
10  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*
11  *Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 954 (9th Cir. 2008).
12  Factual materiality is driven by the substantive law's determination of which facts are critical
13  to the elements of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If
14  reasonable minds could differ on the material facts at issue, then a genuine dispute exists and
15  summary judgment is not appropriate. *See id.* at 250-51. A court does not weigh the evidence
16  or credibility of witnesses in making this determination. *Horphag Research Ltd. v. Garcia*, 475
17  F.3d 1029, 1035 (9th Cir. 2007).

18       The moving party has the initial burden of informing the court how the pleadings and
19  pre-trial discovery "demonstrate the absence of a genuine issue of material fact." *Celotex*
20  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party also has the burden of proof
21  at trial, then they must establish the absence of material fact for each element of their case.
22  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)
23  (citations omitted). Conversely, if the nonmoving party bears the burden of proof at trial, then
24  the moving party can meet its initial burden in two ways: (1) by presenting evidence to negate
25  an essential element of the nonmoving party's case; or (2) by demonstrating that the
26  nonmoving party failed to make a showing sufficient to establish an element essential to that
27  party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S.
28  at 323-24.

1    Once the moving party meets the initial burden, the nonmoving party must set forth

2   facts beyond the assertions and allegations of the pleadings and demonstrate a genuine issue

3   for trial. *Celotex*, 477 U.S. at 324; *Horphag*, 475 F.3d at 1035. The nonmoving party

4   sufficiently demonstrates a genuine issue for trial when the nonmoving party shows that a jury

5   or judge is required to resolve the dispute. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

6   *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A court draws all justifiable inferences towards the

7   nonmoving party. *Anderson*, 477 U.S. at 255. But if the nonmovant's evidence is merely

8   colorable or is not significantly probative, summary judgment may nevertheless be granted.

9   *See id.* at 249-50.

10                                   **DISCUSSION**

11   **I.      Motion for Summary Judgment (#5)**

12          **A.      Notice of Default (Claim One)**

13          In the first cause of action, Plaintiff alleges defective foreclosure for failure to properly

14   serve the Notice of Default. Specifically, Plaintiff alleges that Defendants failed to: (1) mail a

15   copy of the Notice of Default; (2) serve him with a notice as set forth in NRS § 107.085(3)(b);

16   and (3) post the Notice of Default in a conspicuous place on the Property as required by NRS

17   § 107.087(1)(a). (Compl. (#1) at 22).

18          In response to the aforementioned allegations, Defendants provided: (1) the affidavit

19   of Michelle Zamorano stating that she mailed the Notice of Default on July 23, 2010, (Affidavit

20   of Mailing Notice of Default (#13) at 49); (2) the affidavits of Linda Bucciachio (Affidavit of

21   Service (#13-1) at 82) and Monique Hesse (Affidavit of Mailing (#13-1) at 85) stating that they

22   respectively posted on and mailed to the Property a copy of the notice set forth in NRS §

23   107.085(3)(b) with a copy of the promissory note attached; and (3) the affidavit of James

24   Barfield stating that he posted the Notice of Default in a conspicuous place on the Property,

25   (Affidavit of Posting (#13-1) at 2). Because these affidavits demonstrate compliance with the

26   respective statutes, the Court finds no genuine issue of material fact with regard to these

27   specific allegations.

28          Plaintiff also alleges in great length that Defendants failed to substantially comply with

5

1  NRS § 107.080(3) because the Notice of Default was not sent with "return receipt requested."

2  (Compl. (#1) at 22; Opp. to Mot. for Summ. J. (#8) at 4-9); *see* NEV. REV. STAT. § 107.080(3);.

3  Return Receipt is a service of the United States Postal Service ("USPS") that provides proof

4  of delivery to the sender in the form of a paper or electronic copy of the recipient's signature.[1]

5      Here, Defendants mailed a copy of the Notice of Default using Certified Mail, also a

6  service of the USPS. (Affidavit of Mailing Notice of Default (#13) at 50)). Certified Mail, like

7  Return Receipt, requires a signature of the intended recipient upon delivery.[2] Afterward, the

8  sender can verify delivery online using a unique article number.[3] Consequently, both Return

9  Receipt and Certified Mail provide the sender with proof of delivery to the intended recipient,

10  the former in the form of online notification, the latter in the form of the recipient's signature.

11  Therefore, by using Certified Mail's online delivery verification, a sender obtains proof of

12  delivery substantially equivalent to that provided by a Return Receipt. Defendants used online

13  delivery verification, therefore, the Court considers Defendants' actions to have substantially

14  complied with the return receipt requested requirement.

15      However, First American Title, as agent of Cal-Western, executed and recorded the

16  Notice of Default. (Notice of Default (#13) at 46). Although Cal-Western is a properly

17  substituted trustee, there is nothing in the record demonstrating that First American Title had

18  the authority to act as Cal-Western's agent and execute the Notice of Default. *See, e.g.,*

19  *Galleron v. Mann Mortg., LLC*, 2012 WL 1682034 at *4 (D. Nev. May 11, 2012) (denied motion

20  to dismiss for failure to demonstrate agency relationship). Solely for this reason, the Court

21  DENIES the motion for summary judgment as to claim one.

---

[1] United States Postal Service, https://www.usps.com/send/insurance-and-extra-services.htm (last visited July 2, 2012).

[2] *Id.*

[3] United States Postal Service, http://faq.usps.com/eCustomer/iq/usps/request.do?create=kb:USPSFAQ&view()=c%5Bc_usps0301d%5D&varset(source)=sourceType:embedded#confirmation (last visited July 2, 2012).

6

1

**B.     Agency Contact Information (Claim Two)**

2      In the second cause of action, Plaintiff alleges that Defendants' foreclosure mediation

3  certificate is invalid because Defendants failed to comply with NRS § 107.086(2)(a) by failing

4  to provide contact information of agencies and authorities required by statute. (Compl. (#1) at

5  23-24).

6      NRS § 107.086 requires that the Notice of Default include contact information for  a

7  person with authority to negotiate a loan modification and an approved local housing

8  counseling agency. NEV. REV. STAT. § 107.086(2)(a)(1),(2). The notice must also notify the

9  recipient of their right to mediate and include a form where the recipient could elect to mediate.

10  *Id.* § 107.086(2)(a)(4).

11      Defendants provided an affidavit of Michelle Zamorano which states that she, at the

12  request of Cal-Western, mailed a copy of the Notice of Default to Plaintiff. (Affidavit of Mailing

13  Notice of Default (#13) at 50). Defendants attached a true and correct copy of the mailed

14  documents to the affidavit. (*Id.* at 51-69). Defendants appended the statutorily-required forms

15  and contact information to the Notice of Default. (*Id.* at 53-66). Plaintiff received the Notice of

16  Default along with the statutorily-mandated forms on July 26, 2010 by Certified Mail. (*Id.* at 72).

17  Therefore, Plaintiff's allegations are without merit.

18      However, First American Title, as agent for Cal-Western, executed and recorded the

19  Notice of Default. (Notice of Default (#13) at 46). While Defendants have complied with NRS

20  § 107.086(2)(a), there is nothing in the record demonstrating that First American Title had the

21  authority to act as Cal-Western's agent and execute the Notice of Default, therefore, solely for

22  this reason, the Court DENIES Defendants' motion for summary judgment as to claim two.

23

**C.     Notice of Sale (Claim Three)**

24      In the third cause of action, Plaintiff alleges that the Notice of Sale was improper due

25  to Defendants' failure to fully comply with NRS § 107.080(4)(a) and NRS § 107.087(1)(a).

26  (Compl. (#1) at 24-25). Plaintiff complains that Defendants violated NRS § 107.080(4)(a) by

27  failing to provide Plaintiff with the Notice of Sale after the three-month period following the

28  recording of the Notice of Default and before selling the Property. (*Id.*). Plaintiff further

7

1  complains that Defendants violated NRS § 107.087(1)(a) by failing to post the Notice of Sale
2  on the Property within the statutorily-mandated time frame. (*Id.* at 25).

3      Defendants complied with Nevada foreclosure law with respect to the Notice of Sale.
4  NRS § 107.080(4)(a) requires that the Notice of Sale be delivered to the trustor after expiration
5  of the three-month period "following the recording of the notice of breach and election to sell,
6  and before the making of the sale . . . by personal service or by mailing the notice by
7  registered or certified mail." NEV. REV. STAT. § 107.080(4)(a).

8      On July 13, 2010, Cal-Western executed the Notice of Default and election to sell under
9  the deed of trust. (Notice of Default (#13) at 45). The three-month period, following the
10 recording of the Notice of Default, expired on October 13, 2010. Cal-Western sold the Property
11 at a public auction to Fannie Mae on December 13, 2010. (Trustee's Deed Upon Sale (#13-1)
12 at 89). Cal-Western delivered the Notice of Sale by Certified Mail to the Property on November
13 22, 2010. (Affidavit of Mailing Notice of Trustee Sale (#13-1) at 75). Therefore, Defendants
14 fully complied with the requirements of NRS § 107.080(4)(a) and Plaintiff's allegation is without
15 merit.

16     Defendants also posted the Notice of Sale on the Property within the
17 statutorily-mandated time frame. NRS § 107.087(1)(a) requires that the Notice of Sale be
18 posted "in a conspicuous place on the property not later than 3 business days after . . . the
19 notice of sale is recorded." NEV. REV. STAT. § 107.087(1)(a) (valid October 1, 2009 to
20 September 30, 2011) (amended 2011).

21     Pasion Title Services recorded the Notice of Sale on November 22, 2010. (Notice of
22 Trustee Sale (#13-1) at 67). Therefore, the statute requires that Defendants post the Notice
23 of Sale in a conspicuous place on the Property on or before November 25, 2010. *See* NEV.
24 REV. STAT. § 107.087(1)(a). Linda Bucciachio, on behalf of Defendants, posted the Notice of
25 Sale on the Property on November 19, 2010. (Affidavit of Posting (#13-1) at 70). Therefore,
26 Defendants posted the Notice of Sale within the statutorily-mandated time frame and Plaintiff's
27 allegation is without merit. Plaintiff has failed to demonstrate a genuine issue of material fact,
28 therefore, the Court GRANTS Defendants' motion for summary judgment as to claim three.

1

**D.    Trustee's Deed Upon Sale (Claim Four)**

2      In the fourth cause of action, Plaintiff alleges that Defendants were not authorized to

3  sell the Property within the meaning of NRS § 107, because Defendants lacked standing.

4  (Compl. (#1) at 25-26). In support of his allegation, Plaintiff argues that Defendants failed to

5  show him that the November 7, 2004 note was validly transferred. (Opp. to Mot. for Summ.

6  J. (#8) at 16-18; *see* Adjustable Rate Note (#13) at 6-11).

7      Plaintiff relies on the Nevada Supreme Court's holding in *Leyva v. Nat'l Default*

8  *Servicing Corp.*, 255 P.3d 1275 (Nev. 2011). (Opp. to Mot. for Summ. J. (#8) at 16). *Leyva*

9  held that "[t]he obligor on the note has the right to know the identity of the entity that is 'entitled

10 to enforce' the mortgage note." 255 P.3d at 1279. Publicly recorded assignments provide

11 sufficient notice to an obligor of the entities with authority to enforce a note. *Villagrana v.*

12 *Recontrust Co. N.A.*, 2012 WL 1890236 at *6 (D. Nev. May 22, 2012).

13     Plaintiff acknowledges that he refinanced through CTX in November 2004. (Deed of

14 Trust (#13) at 13). On July 12, 2010, MERS, as nominee for CTX, transferred the beneficial

15 interest in the deed of trust from CTX to Aurora Loan Services, LLC ("Aurora"). (Corporate

16 Assignment of Deed of Trust (#13) at 39). First American Title recorded the assignment of

17 deed of trust from CTX and Aurora on August 9, 2010. (*Id.*). On January 21, 2011, Aurora

18 transferred the beneficial interest in the deed of trust to Fannie Mae. (Corporate Assignment

19 of Deed of Trust (#13) at 42). On February 2, 2011, First American Title recorded the

20 assignment of deed of trust from Aurora to Fannie Mae. (*Id.*). The assignments from CTX to

21 Aurora and from Aurora to Fannie Mae were both publicly recorded, therefore, under

22 *Villagrana*, Defendants provided Plaintiff with the identities of the entities with authority to

23 enforce the note. 2012 WL 1890236 at *6.

24     Plaintiff further alleges that Defendants failed to record the trustee's deed upon sale in

25 line with the requirements of NRS § 107.080(8). (Compl. (#1) at 26).

26     NRS § 107.080(8) requires that: the seller shall record the trustee's deed upon sale

27 within 30 days of sale; or (1) the seller shall deliver the deed upon sale to the successful

28 bidder within 20 days of sale; and (2) the successful bidder shall record the deed upon sale

1   within 10 days of receipt. NEV. REV. STAT. § 107.080(8) (valid April 1, 2010 to June 30, 2011)

2   (amended 2011).

3        Cal-Western sold the Property to Fannie Mae on December 13, 2010. (Trustee's Deed

4   Upon Sale (#13-1) at 91). As per statute, Defendants should have recorded the trustee's deed

5   upon sale by January 12, 2011. NEV. REV. STAT. § 107.080(8). First American Title recorded

6   the trustee's deed upon sale on February 2, 2011, 51 days after the date of sale. (Trustee's

7   Deed Upon Sale (#13-1) at 89). Therefore, Defendants recorded the trustee's deed upon sale

8   outside of the statutorily-mandated time frame.

9        Under NRS § 107.080(5)(a), a court must void a sale if a trustee does not substantially

10  comply with Nevada foreclosure laws. Previously, this Court has held that a trustee

11  substantially complied with Nevada foreclosure laws even though they failed to post a notice

12  of default on the property. *Corn v. Recontrust Co., N.A.*, 2011 WL 1135943 at *6 (D. Nev. Mar.

13  24, 2011). Here, Defendants recorded the trustee's deed upon sale 21 days after the

14  statutorily-mandated deadline. In light of: (1) the Court's prior holding in *Corn* on substantial

15  compliance; and (2) Plaintiff's failure to allege harm from Defendants' delay in recording the

16  trustee's deed upon sale, the Court finds that Defendants' actions have substantially complied

17  with Nevada foreclosure laws. *Id.* Plaintiff has therefore failed to present a genuine issue of

18  material fact within this claim, and the Court GRANTS the motion for summary judgment as

19  to claim four.

20        **E.    Quiet Title (Claim Five)**

21        The Court DENIES the motion for summary judgment on Plaintiff's fifth claim for quiet

22  title. A claim for quiet title "requires a plaintiff to allege that the defendant is unlawfully

23  asserting an adverse claim to title to real property." *Carucci v. Wells Fargo Home Mortg.*, 2010

24  WL 3283537 at *2 (D. Nev. Aug. 17, 2010). Due to denial of the motion for summary judgment

25  as to claims one and two, there is a genuine issue of material fact with respect to quiet title,

26  therefore, the Court DENIES the motion for summary judgment as to claim five.

27        As such, the Court denies the motion for summary judgment (#5) on claims one, two,

28  and five but grants the motion for summary judgment on counts three and four.  The Court

grants Defendants leave to file another motion for summary judgment that provides documentary proof of an agency relationship between Cal-Western and First American Title prior to the execution of the Notice of Default.  If Defendants cannot establish this relationship, then they will need to start the foreclosure process again and file a new notice of default.

## II.    Motion to Strike (#14)

The Court DENIES Plaintiff's motion to strike. Plaintiff seeks to strike Defendants' argument, located in Defendants' reply in support of the motion for summary judgment, that Plaintiff failed to file a notice of lis pendens within the time frame prescribed by Nevada foreclosure law. (Motion to Strike (#14) at 4; *see* Reply (#12) at 25). Because the Court denied Defendants' motion for summary judgment as to claims one, two, and five, Defendants cannot expunge lis pendens at this time. As such, the Court DENIES the motion to strike (#14) the lis pendens claim as moot.

## III.    Motion to Expunge Lis Pendens (# 18)

The Court DENIES Defendants' motion to expunge lis pendens because the Court denied Defendants' motion for summary judgment as to claims one, two, and five.

///
///
///
///
///
///
///
///
///
///
///
///
///

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment (#5) is DENIED in part as to claims one, two, and five and GRANTED in part as to claims three and four.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (#14) is DENIED as moot.

IT IS FURTHER ORDERED that Defendants' Motion to Expunge Lis Pendens (#18) is DENIED.

IT IS FURTHER ORDERED that Defendants have leave to file another motion for summary judgment that provides documentary proof of an agency relationship between Cal-Western and First American Title prior to the execution of the Notice of Default.  If Defendants cannot establish this relationship, then they will need to start the foreclosure process again and file a new notice of default.


DATED: This _3rd day of August, 2012.


_____
United States District Judge

12